### In re Petition of Thomas E. CAHILL (Applicant No. 118).

#### No. 8, 1996.

Supreme Court of Delaware.

Submitted: May 29, 1996.
Decided: June 10, 1996.

John R. Weaver, Jr., Wilmington, for petitioner.

Kent A. Jordan, Wilmington, for Board of Bar Examiners.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

HOLLAND, Justice:

This is an appeal from a decision of the Board of Bar Examiners of the Delaware Supreme Court (the "Board") denying the appellant's, Thomas E. Cahill's ("Cahill") Petition for Special Accommodations in taking the 1995 Delaware Bar Examination. Cahill contends that it was arbitrary, unfair, and a denial of due process for the Board to deny him special accommodations without a hearing. This Court has concluded that Cahill's contention is meritorious.

### Facts

Cahill failed to pass the Delaware Bar Examination in 1991, 1992, and 1993. Following this Court's decision in *Rubenstein*, Cahill decided to ascertain whether his lack of success with the Bar Examination might also be attributable to a learning disability. *See In re Rubenstein*, Del.Supr., 637 A.2d

1131 (1994). Cahill arranged to be tested by the expert identified in *Rubenstein,* William F. Shaw, M.Ed., NCSP, a Delaware licensed psychologist.

Cahill initially contacted Mr. Shaw in 1994. Rule 28 of the Board of Bar Examiners Rules ("Board Rules" or "B.R.") then provided that a qualified applicant could take the Bar Examination three times. In 1994, Board Rule 28 also gave the Board discretion, upon an appropriate showing of special circumstances, to grant an applicant a fourth opportunity to take the Bar Examination.

### Cahill's 1994 Petition

Cahill's first submission to the Board of a report from Mr. Shaw was made in conjunction with a petition to take the Bar Examination a discretionary fourth time. Mr. Shaw's report expressed the conclusion that Cahill had a learning disorder which warranted affording him a fourth opportunity to take the Bar Examination and with special accommodations. Mr. Shaw attributed Cahill's disability to a high fever in 1984.

In response to Cahill's petition, the Board, *sua sponte,* sought the assistance of Dr. Frank R. Vellutino, Ph.D., a licensed psychologist in the State of New York. Dr. Vellutino reviewed Mr. Shaw's report. In a June 21, 1994, letter, Dr. Vellutino reported to the Board, *inter alia* :

> All things considered, I cannot concur with Mr. Shaw's analysis and interpretation of Mr. Cahill's test results and am quite confident in concluding that there is no compelling evidence in these results or in Mr. Shaw's report that Mr. Cahill suffers from any basic *cognitive* or linguistic deficit or any basic deficit in skills and abilities necessary for taking the bar exam under normal circumstances.

By letter dated June 28, 1994, the Board informed Cahill that his petition to take the Bar Examination a fourth time was denied. Cahill was provided with a copy of Dr. Vellutino's report. Cahill was informed of his right to request a hearing on the Board's denial of his petition to take the Bar Examination for a fourth time. Cahill initially requested a hearing on the Board's decision denying his request to take the 1994 Bar Examination, but subsequently withdrew his petition.

### Cahill's 1995 Petition

In 1995, Cahill again petitioned to take the Bar Examination a discretionary fourth time. On April 19, 1995, however, Board Rule 28 was amended to provide four opportunities to take the Bar Examination, with a fifth opportunity in the Board's discretion. *See In re Murray,* Del.Supr., 656 A.2d 1101, 1102 n. 3 (1995). The Board informed Cahill of the change in Board Rule 28. The Board also advised him that he would have to immediately file a petition pursuant to Board Rule 15, if he wanted any special accommodations in taking the 1995 Bar Examination.

On May 2, 1995, Cahill filed a petition for special accommodations. *See* B.R. 15. Cahill submitted two additional reports in support of his petition: a supplemental report by Mr. Shaw and a report by Dr. Pedro M. Ferreira, Ph.D., another licensed psychologist. Dr. Ferreira's report was based upon a review of the analyses and conclusions set forth in Mr. Shaw's and Dr. Vellutino's reports.

The Board again asked Dr. Vellutino to evaluate the opinions of Cahill's experts. In a June 7, 1995, letter report to the Board, Dr. Vellutino concluded that his "analysis of the new materials provided by Mr. Shaw gives me no reason to alter my previous conclusion that results from Mr. Shaw's assessment provide no compelling evidence that Mr. Cahill suffers from organic brain injury that slows down his rate of reading and impairs reading comprehension." He explained the bases for that conclusion. Dr. Vellutino stated that his analysis also applied to Dr. Ferreira's report.

On June 12, 1995, without a hearing, the Board informed Cahill that his 1995 petition for special accommodations had been considered and was denied. The Board's decision was based upon its acceptance of Dr. Vellutino's 1994 and 1995 reports. Cahill was provided with a copy of Dr. Vellutino's June 7, 1995 report.

### Board's 1995 Decisions

The Board advised Cahill of its view that he had no right to a hearing but did have 30 days to appeal the Board's decision to this Court, if he believed the Board's decision affected his substantial rights. B.R. 41. Cahill did not file an appeal at that time. Cahill took the 1995 Bar Examination without special accommodations and, once again, failed to pass.

On November 8, 1995, Cahill filed a petition with the Board pursuant to Board Rule 20.[1] The Board informed Cahill that his "petition was denied by the Board because it does not raise any facts or information which would cause the Board to reconsider its denial of Cahill's 1995 petition for special accommodations."[2] Cahill filed this appeal on January 4, 1996.

### The Parties' Contentions

In this appeal, Cahill claims that, in addition to being arbitrary and unfair, the Board's decision denying his request for special accommodations was a denial of his right to procedural due process under the United States and Delaware Constitutions. *See* U.S. CONST. amend. XIV; DEL. CONST. art. I, § 7. Cahill asserts that he was denied due process of law because the Board did not grant him a hearing on the issue of whether or not he suffered from a learning disability, and did not permit him to present witnesses or to cross-examine the Board's expert.

The Board asserts that Cahill has no constitutional right to a hearing in connection with its denial of his request for special accommodations under Board Rule 15. Accordingly, the Board argues that it has the discretion to either permit submissions beyond the Rule 15 petition itself or to conduct a hearing in connection with a request for special accommodations.

### Bar Examinations
### Procedural Due Process

The Supreme Court of the United States has held that "[a] State cannot exclude a person from the practice of law ... in a manner or for reasons that contravene the Due Process ... Clause of the Fourteenth Amendment." *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224 (1963) (citing *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957)). *Accord In re Reardon*, Del.Supr., 378 A.2d 614, 618 (1977)[3] (citing *Schware*). In *Willner*, the Supreme Court held that the applicant "was denied procedural due process when he was denied admission to the bar ... without a hearing on the charges filed against him...." *Willner v. Committee on Character and Fitness*, 373 U.S. at 106, 83 S.Ct. at 1181. The Supreme Court also held that "'[t]he requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the concluding parts of the procedure *as well as to the beginning and intermediate steps.*'" *Id.*

### Procedural Due Process
### Board of Bar Examiners Rules

The rules of the Delaware Board of Bar Examiners provide applicants with the basic rights of procedural due process, if a factual dispute arises in certain enumerated categories. Specifically, an applicant may request a hearing before the Board if a factual dispute

---

1. Board Rule 20 provides:

   An applicant who is unsuccessful on the Bar Examination, the Professional Conduct Examination, or the Professional Conduct Reexamination may file a petition for review with the Board if the applicant claims to be aggrieved by an action of the Board.

   B.R. 20. A petition for review under Board Rule 20 must be filed either 30 days after the results of the Bar Examination have been posted, or 15 days after the date when materials related to the applicant's failure to pass are forwarded to the applicant, whichever is later. *See* B.R. 19, 21.

2. Cahill also filed an amended petition under Board Rule 20 on November 29, 1995. However, the Board did not consider Cahill's amended petition, because it viewed the amended petition as untimely filed under Board Rule 21.

3. In *Reardon*, this Court found that the Board's action with regard to a particular bar examination question was reasonable and rationally furthered a legitimate Board purpose. Thus, the Board's action did not contravene due process or equal protection. *In re Reardon*, Del.Supr., 378 A.2d 614, 618 (1977).

arises with regard to his or her (i) character, aptitude or fitness to practice law, (ii) educational background, (iii) candor during the application and admission process, or (iv) request for a discretionary fifth opportunity to take the Bar Examination. *See* B.R. 29.[4]

If a factual dispute arises in one of the categories enumerated in Board Rule 29, the procedural due process rights of an applicant are set forth in Board Rules 30 through 41. Under these rules, upon timely filing of a petition, an applicant is entitled to a hearing, upon written notice, before a panel of the Board. *See* B.R. 30, 32, 35, 36. Prior to the hearing, the applicant has the right to have witnesses and other sources of evidence subpoenaed. *See* B.R. 36(d), 37. At the hearing, the applicant has the opportunity to appear personally, to be represented by counsel, and to present documentary evidence and witness testimony. *See* B.R. 36(d).

### Board Rule 15
### Special Accommodation Request

Cahill's petition for special accommodations in taking the 1995 Bar Examination was filed under Board Rule 15, which provides, in relevant part:

(a) **Requests for Special Accommodations.** The Bar Examination and Professional Conduct Examination shall be administered in a manner that does not discriminate against individuals with disabilities. An applicant who is otherwise eligible to take the Bar Examination and/or the Professional Conduct Examination may request reasonable special

accommodations with respect to the manner in which the examination is administered, if, by virtue of a temporary or permanent disability, the applicant is unable to take the examination under normal testing conditions.

B.R. 15(a).

Cahill fully complied with all requirements of Board Rule 15 in his 1995 request for special accommodations. Cahill's petition was under oath and designated the nature of the disability that necessitated special accommodations, as well as the specific accommodations requested. *See* B.R. 15(b).[5] Cahill's petition was also accompanied by a sworn statement from an appropriate medical expert. *Id.*

### Factual Dispute
### Special Accommodations Request

Board Rule 15 specifically states that the Board may request additional information from the applicant or, where deemed necessary by the Board, the applicant may be required to undergo a physical examination by an expert chosen by the Board:

The Board may further require that an applicant seeking special accommodations provide additional information or documentation in support of the application. Such information or documentation may include, but is not limited to, information concerning special accommodations provided during the applicant's legal education and certification from the schools where such special accommodations were provided. Where deemed necessary by the Board, the applicant also may be required

---

4. Board Rule 29 provides:
   If an application has not been approved by the Board because there exists disputed issues of fact with regard to the subject matter of Supreme Court Rule 52(a)(1) or (4), Board of Bar Examiners Rule 7 or 28(b), and/or questions as to the applicant's character or fitness the applicant may petition the Board for a hearing. B.R. 29.

5. Board Rule 15(b) provides:
   (b) **Form and Timing of Requests.** A request for special accommodations must be made by submitting a petition for accommodations with a timely application to take the Bar Examination and/or the Professional Conduct Examination. The petition must be under oath and must desig-

nate the nature of the disability that necessitates special accommodations, as well as the specific accommodations requested. The petition also must be accompanied by a sworn statement from appropriate medical experts describing:
   1. The nature and the extent of the impairment;
   2. The test or tests performed to diagnose the impairment;
   3. The effect of the disability on the applicant's ability to take the test under normal testing conditions; and
   4. The special conditions recommended by the medical expert.
   B.R. 15(b).

to undergo a physical examination to be conducted by a medical expert chosen by the Board. The costs of any examination or testing required by the Board in connection with such a petition shall be borne by the applicant.

The Board shall review each petition and may, in its discretion grant the request for special accommodations, provide alternative accommodations, or deny the request.

B.R. 15(b).

Neither of the additional options under Board Rule 15 were requested by the Board prior to its denial of Cahill's petition. Rather, the Board, *sua sponte*, contacted Dr. Vellutino, requesting that he review the analyses and conclusions of Cahill's experts, Mr. Shaw and Dr. Ferreira. Dr. Vellutino's opinion regarding the existence of Cahill's disability conflicted with Mr. Shaw's and Dr. Ferreira's reports. The Board resolved that conflict adversely to Cahill based upon its acceptance of Dr. Vellutino's opinion.

Consulting Dr. Vellutino was a reasonable response on the part of the Board to Cahill's petition for special accommodations. The Board's own rules, however, do not provide for such a course of action.[6] The Board's consultation with its own medical expert to review the reports submitted by Cahill resulted in a factual dispute regarding the predicate for Cahill's petition, i.e., the existence of any disability.

### Board Procedures Modified

■ This opinion has noted that the Board's Rules specifically provide an applicant with the right to petition for a hearing to resolve certain factual disputes. B.R. 30. There are no procedures, however, in the event of a factual dispute regarding an applicant's request for special accommodations under Board Rule 15. Having created a hearing process to resolve certain factual

disputes, the Board should have provided Cahill with the same procedural rights regarding his disputed request for special accommodations. *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). *See also In re Rubenstein*, Del.Supr., 637 A.2d 1131 (1994).

■ Admission to the Delaware bar is governed exclusively by this Court. *In re Hudson*, Del.Supr., 402 A.2d 369 (1979). The application and testing procedures are administered by the Board, which is appointed by this Court. Supr.Ct.R. 51 and 52. This Court holds that factual disputes which could result in either the denial of an application to take the Bar Examination at all or to take the Bar Examination with special accommodations must be resolved by the Board in the same manner.

In that regard, this Court notes that a committee or panel of the Board makes the initial factual determination about an application, e.g., character and fitness. B.R. 4(d). If a preliminary factual dispute arises involving character or fitness, which would be disqualifying if resolved adversely, the applicant can petition for a hearing. B.R. 29. Such a dispositive hearing is conducted by a separate panel of the Board and constitutes the Board's final action. B.R. 32.[7] The same procedural steps must be followed by the Board when investigating and deciding petitions for special accommodations.[8] *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224 (1963). *In re Reardon*, Del.Supr., 378 A.2d 614 (1977). *In re Rubenstein*, Del. Supr., 637 A.2d 1131 (1994).

### Cahill's Remedy

The record reflects that Cahill took the Delaware Bar Examination for a fourth time in 1995. Consequently, Cahill will only be

---

6. The rules of the Board of Bar Examiners in Ohio provide: "The Board may seek the assistance of a medical, psychological, or other authority of the Board's choosing in reviewing a request." *See* Ohio Board of Bar Examiners Policy on Applicants with Disabilities, § IV(A)(1). The **Board's Rule 15 has been amended today** to include an identical provision.

7. If the request for special accommodations is completely or partially denied, the applicant can appeal to this Court before or after taking the Bar Examination. Supr.Ct.R. 52(f); B.R. 41.

8. *See* Pobjecky, *The Demands of Due Process in Bar Admission Proceedings, The Bar Examiner,* Feb. 1996, at 45.

permitted to take the Delaware Bar Examination again, in the discretion of the Board. B.R. 28(b). This Court has, however, exclusive authority with respect to applications for admission to the Delaware Bar. *In re Rubenstein,* 637 A.2d at 1140.

The Board should not have denied Cahill's 1995 Rule 15 request for special accommodations without a hearing. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224 (1963); *In re Rubenstein,* 637 A.2d at 1139. *Compare In re Applicant No. 5,* Del.Supr., 658 A.2d 609, 612–13 (1995). The appropriate and equitable remedy is for this Court to order that the next time Cahill sits for the Delaware Bar Examination shall be *deemed* to be his fourth opportunity for purposes of Board Rule 28.[9] Cahill, and any other appli-

cant for the Delaware Bar Examination who petitions for special accommodations, will be afforded the procedural rights set forth in this opinion.[10]

### *Conclusion*

The Board's decision to deny Cahill special accommodations without a hearing is reversed. This matter is remanded for further proceedings in accordance with this opinion. The mandate shall issue forthwith.

---

9. Cahill submits that the only appropriate equitable remedy in this case would be for this Court to exercise its plenary authority to grant his request for admission to the Bar, as this Court did in *Rubenstein.* However, the remedy in *Rubenstein* was considered by this Court to be only appropriate to the "limited and unique circumstances" of that case. *In re Murray,* Del.Supr., 656 A.2d 1101, 1103 (1995).

10. Board Rule 29 has been amended today. As amended, Board Rule 29 now provides:

**RULE 29. Petition for a Hearing.**

If an application has not been approved by the Board because there exists disputed issues of fact with regard to the subject matter of Supreme Court Rule 52(a)(1) or (4), Board of Bar Examiners Rule 7, Rule 15, or Rule 28(b), and/or questions as to the applicant's character or fitness the applicant may petition the Board for a hearing.