IN THE SUPREME COURT OF THE STATE OF DELAWARE

FRANCIS QUILL,                      §
                                    §    No. 14, 2014
    Defendant Below,                §
    Appellant,                      §    Court Below–Superior Court of
                                    §    the State of Delaware in and for
    v.                              §    New Castle County
                                    §
STATE OF DELAWARE,                  §
                                    §
    Plaintiff Below,                §    Cr. ID No. 1304016180
    Appellee.                       §

Submitted:  June 23, 2014
Decided:    September 12, 2014

Before **HOLLAND**, **RIDGELY** and **VALIHURA**, Justices.

### O R D E R

This 12th day of September 2014, upon consideration of the appellant's brief filed under Supreme Court Rule 26(c) ("Rule 26(c)"), his attorney's motion to withdraw, and the State's response, it appears to the Court that:

(1)   Alderman Machine Shop (AMS) and Delaware Plumbing Supply (DPS) are neighboring businesses located on North Dupont Highway in New Castle, Delaware.  DPS, a wholesale plumbing supply company, has a two-acre fenced-in storage yard behind its main warehouse where it stores the larger pipes and fittings that it sells.

(2)   On April 17, 2013, between 7:00 and 7:15 a.m., Randolph Stevenson, an AMS auto mechanic, arrived at work to find a man on AMS' property, loading

metal fittings and other plumbing components belonging to DPS into the trunk of a green Chevrolet cavalier. Stevenson did not recognize the man or the car. When Stevenson approached the man and asked him what he was doing, the man dropped the fittings he was holding and replied that he was not taking AMS' property. The man then got in the car and left.

(3) After the man left, Stevenson went next door and told DPS manager, Michael Poppiti, that he had just caught someone in the back removing DPS' property. Poppiti immediately inspected the fenced-in storage yard and saw that fittings and other plumbing components had been moved closer to a section of fence separating DPS from AMS. Poppiti also noticed that the same section of fence – and the barbed wire on top – was bent or pushed down, and that fittings and components belonging to DPS were on AMS' side of the fence. Poppiti had not given anyone permission to enter the fenced-in area to remove the fittings and components.

(4) Delaware State Police Corporal Scott Linus was assigned to investigate the matter that morning. Cpl. Linus learned that, just after 7:30 a.m., a man driving a green Chevrolet cavalier sold 800 pounds of metal to Eastern Metal Recycling (EMR), a scrap metal company located three or four miles from DPS. Ronald Dagenais, an EMR employee, provided Cpl. Linus with a copy of the man's photo ID and surveillance photos that showed the man and his car in the

2

EMR scrap yard earlier that morning. Also, Dagenais told Cpl. Linus that the man, Francis Quill, was a regular customer of EMR.

(5) From a photo lineup prepared by Cpl. Linus, Stevenson picked Quill as the man he saw earlier that morning loading the property belonging to DPS into a green Chevrolet cavalier. Also, DPS branch manager, Todd Wise, identified the items that Quill sold to EMR as property belonging to DPS.

(6) In May 2013, Quill was indicted on charges of Theft and Criminal Trespass in the Second Degree. After a two-day trial in September 2013, the jury convicted Quill on the theft charge. The State entered a *nolle prosequi* on the criminal trespass charge when the jury was unable to reach a unanimous verdict on that charge. On December 13, 2013, the Superior Court granted the State's habitual offender motion and sentenced Quill to three years at Level V. This is Quill's direct appeal.

(7) On appeal, Quill's trial counsel ("Counsel") has filed a brief and a motion to withdraw under Rule 26(c) asserting that there are no arguably appealable issues. Quill, through Counsel, has submitted several issues for the Court's consideration. The State has responded to Quill's issues and has moved to affirm the Superior Court's judgment.

(8) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), the Court must be satisfied that the defendant's counsel has

3

made a conscientious examination of the record and the law for arguable claims.[1] We must also conduct our own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(9) At trial, Cpl. Linus testified that, in a post-Miranda interview, Quill admitted that he had picked up scrap metal that morning at AMS, and that afterwards he went to EMR. According to Cpl. Linus, Quill claimed that he only collected what he believed to be scrap metal on AMS' side of the fence, and he denied ever going onto DPS' property.

(10) At trial, Wise testified that the value of the missing DPS property was between $3,500 and $4,000. Wise testified that not everything he thought was missing had been recovered, but he estimated that the unrecovered items were worth less than $500. He also stated that his list did not include a recovered valve valued between $1,100 and $1,300.

(11) Quill has submitted several issues for the Court's consideration. First, Quill claims that there was insufficient probable cause to arrest him for criminal trespass in the second degree because no one saw him on DPS' property. Because Quill did not challenge the basis for his arrest prior to trial, our review on appeal is

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[2] *Id.*

4

limited to "plain error."[3] Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[4]

(12) Under the Delaware Code, "[a] person is guilty of criminal trespass in the second degree when the person knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner manifestly designed to exclude intruders."[5] In this case, Cpl. Linus swore out an affidavit of probable cause for Quill's arrest for criminal trespass in the second degree based, in part, on evidence suggesting that Quill scaled DPS' barbed wire-topped fence to gain access to DPS' storage yard. Under these circumstances, there was sufficient probable cause for issuance of the arrest warrant for criminal trespass in the second degree. Moreover, the grand jury's subsequent indictment of Quill for criminal trespass in the second degree was an independent determination of probable cause.[6]

(13) Quill next claims that the State should have conducted fingerprint and DNA testing on the evidence. Again, because Quill did not raise the claim at trial,

---

[3] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (citations omitted). *See also* Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.")

[4] *Wainwright*, 504 A.2d at 1100.

[5] 11 *Del. C.* § 822.

[6] *Kane v. State*, 2013 WL 5519823, at *2 (Del. Oct. 2, 2013) (citing *Joy v. Superior Court*, 298 A.2d 315, 316 (Del. 1972)).

5

we have reviewed the claim for plain error.[7]  As a general matter, Delaware law does not require that the State conduct any specific testing on the physical evidence that it gathers.[8]  In this case, in the absence of any indication that Quill requested fingerprint and DNA testing, or that either fingerprint or DNA testing would have affirmatively proven that he was not guilty of Theft, Quill has not demonstrated that he was prejudiced by the State's decision not to conduct fingerprint and DNA testing on the evidence.

(14)   Next, Quill claims that the prosecutor committed misconduct during the State's opening statement when she "repeatedly" told the jury that Quill was "caught red-handed."  Also, Quill claims the prosecutor committed misconduct when she asked leading questions designed to elicit "false testimony" from the witnesses, and when she made arguments to the jury using "false evidence." Because Quill did not object to the asserted prosecutorial misconduct at trial, and the trial judge did not intervene *sua sponte*, we have reviewed the alleged misconduct for plain error.[9]

---

[7] Del. Supr. Ct. R. 8.

[8] *Anderson v. State*, 1999 WL 504332, *3 (Del. Mar. 18, 1999) (citing *Deberry v. State*, 457 A.2d 744, 751 (Del. 1983)).

[9] *Williams v. State*, 2014 WL 2803068, at *1 (Del. June 17, 2014) (quoting *Torres v. State*, 979 A.2d 1087, 1093-94 (Del. 2009)).

(15)  A prosecutor's opening statement may allude to evidence she intends to offer that she believes in good faith will be admissible at trial.[10]  In this case, the evidence adduced at trial – specifically Stevenson's testimony that he caught Quill in the act of loading DPS' property into the trunk of a car – supported the prosecutor's opening statement that Quill was "caught red-handed."[11]  The balance of Quill's prosecutorial misconduct claim, i.e., that the prosecutor asked leading questions designed to elicit "false testimony" and made arguments based on "false evidence," is not supported by the trial transcript.

(16)  Next, Quill claims for the first time on appeal, that Stevenson and Wise testified "falsely" at trial.  On plain error review, his claim is without merit. It is well settled that the credibility of witnesses is a matter exclusively within the province of the jury.[12]  In this case, the record reveals no basis upon which to question the jury's credibility determinations.  Moreover, to the extent there were conflicts or inconsistencies in the witnesses' trial testimony that too was a matter for the jury to resolve.[13]

---

[10] *Hughes v. State*, 437 A.2d 559, 566-67 (Del. 1981) (citing ABA Standards, the Prosecution and Defense Functions § 5.5 (Approved Draft, 1971)).

[11] Trial tr. at 37-42 (Sep. 17, 2013).

[12] *Brooks v. State*, 2011 WL 6258843, at *3 (Del. Dec. 13, 2011) (citing *Poon v. State*, 880 A.2d 236, 238 (Del. 2005)).

[13] *Kane v. State*, 2013 WL 5519823, at *2 (Del. Oct. 2, 2013) (citing *Tyre v. State*, 402 A.2d 326, 330 (Del. 1980)).

7

(17) Quill next claims that there was insufficient evidence presented at trial to support his conviction for Theft of property valued at $1,500 or more. Because Quill did not present his insufficient evidence claim to the trial court in a motion for judgment of acquittal, we have reviewed the claim for plain error and have concluded that there is none.

(18) "The standard of review in assessing an insufficiency of evidence claim is 'whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt.'"[14] Under the Delaware Code, "[a] person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it."[15] Theft of property valued at $1,500 or more, is a class G felony.[16] In this case, the State presented sufficient evidence from which any rational juror could have found Quill guilty of Theft of property valued at $1,500 or more, beyond a reasonable doubt.

(19) Finally, Quill makes several assertions that his trial counsel was ineffective. It is well settled that this Court does not consider ineffective assistance

---

[14] *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995) (quoting *Robertson v. State,* 596 A.2d 1345, 1355 (Del. 1991)).

[15] 11 *Del. C.* § 841(a).

[16] *Id.* at (c)(1).

of counsel claims that are raised for the first time on direct appeal.[17] In this case, because Quill's ineffective counsel claims were not considered by the Superior Court, we decline to consider the claims in this appeal.

(20) The Court concludes that Quill's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Quill could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

---

[17] *Collins v. State*, 420 A.2d 170, 177 (Del. 1980).